# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

In the Matter of the COMPLAINT of
William Martz and Jane Martz, as
owners of a Nautique vessel, for
Limitation of Liability

Case No. 3:20-cv-00152-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 19 is Claimant Andrew Horazdovsky's Motion for

(1) Summary Judgment Dismissing Complaint, (2) Vacating the Court's June 30,

2020 Injunction, and (3) an Award of Reasonable Attorney Fees Incurred in

Responding to the Complaint.[1]  Limitation Plaintiffs William Martz and Jane Martz

responded in Opposition at Docket 23.  Claimant replied at Docket 27.  Also before

the Court is Limitation Plaintiffs' Cross Motion for Summary Judgment at Docket

24.  Claimant responded in opposition at Docket 32.  Limitation Plaintiffs replied at

Docket 35.  The Court heard argument on the motions on September 3, 2020.

---

[1] The Court denied the portion of Claimant's motion seeking attorney's fees at the conclusion of
oral argument.  *See* Docket 37.

# BACKGROUND

## A.    Procedural History

On June 25, 2020, Limitation Plaintiffs commenced this action for limitation of liability.[2]  They seek to enjoin any action against them arising from a collision involving their vessel and to confine any resulting liability to the value of their interest in the vessel, which they estimate as $15,000.[3]  The vessel in question is Limitation Plaintiffs' "recreational vessel, a 21-foot 1998 Correct Craft Air Nautique" (the "Nautique").[4]  As described in the complaint, Limitation Plaintiffs' son, Reagan Martz, was operating the Nautique on June 9, 2018 on Flat Lake when it collided with an inflatable raft being towed by a vessel operated by Andrew Horazdovsky.[5]  Jennifer Horazdovsky was in the raft and as a result of the collision, she died.[6]  On June 4, 2020, Mr. Horazdovsky initiated an action in Alaska Superior Court bringing several claims against Jane and William Martz, among others, arising under state tort law and federal maritime and admiralty law.[7]

---

[2] Docket 1 (Complaint).

[3] Docket 1 at 6; Docket 1 at 4, ¶ 13.

[4] Docket 1 at 2, ¶ 3.

[5] Docket 1 at 3, ¶¶ 7–10.

[6] Docket 1 at 3, ¶¶ 7–10.

[7] Docket 1 at 3–4, ¶ 11; *see also* Docket 1-1 (Horazdovsky Complaint).  The action in state court is *Horazdovsky v. Martz, et al.*, Case No. 3AN-20-06488CI.  Mr. Horazdovsky brought the action in his personal capacity, as well as in his capacity as personal representative of Jennifer Horazdovsky's estate, and on behalf of their minor child.  *See* Docket 1-1 at 1.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 2 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 2 of 30

On June 30, 2020, finding that Limitation Plaintiffs had complied with the procedural requirements necessary to initiate an action to limit liability pursuant to 46 U.S.C. § 30511, the Court appointed a Trustee to hold title to the Nautique as well as a $1,000 deposit from Limitation Plaintiffs for costs.[8] As prescribed by the statute, the Court ordered that all claims against Limitation Plaintiffs and their property shall cease and enjoined the further prosecution of any action or proceeding against them with respect to any claim subject to limitation, including those in the state court action.[9]

On July 3, 2020, Claimant filed the instant motion for summary judgment and for vacatur of the Court's June 30, 2020 injunction.[10] On July 23, 2020, Limitation Plaintiffs filed a cross-motion for partial summary judgment on the issue of timeliness.[11]

---

[8] Docket 17 at 5.

[9] Docket 17. *See In re Complaint of Moog*, Case No. 3:19-cv-00030-DCN, 2019 WL 3849152, at *3 (D. Idaho Aug. 14, 2019); 46 U.S.C. § 30511(c) ("When an action has been brought under this section . . . all claims and proceedings against the owner related to the matter in question shall cease); Fed. R. Civ. P. Supp. R. F(3) ("On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."). The Court's order also served as notice to any person claiming damages as a result of the June 9, 2018 collision of the Nautique to file any claims with this Court prior to August 31, 2020. Docket 17 at 6. No other claims were filed.

[10] Docket 19.

[11] Docket 24.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 3 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 3 of 30

## B.    The Parties' Correspondence

Prior to commencement of the state court action, counsel for Limitation Plaintiffs and counsel for Claimant exchanged a series of e-mails and letters.

On June 18, 2018, on behalf of Claimant, attorney Timothy Lamb sent a letter to Reagan Martz captioned "Re: Request for information concerning the boat owner and whether the boat was insured for the accident at Flat Lake."[12]  Mr. Lamb indicated that he was "assisting Andrew Horazdovsky in searching for any potential insurance coverage that might be available to compensate the Estate of his deceased wife and their small child," and asked for the name and contact information of the vessel owner, and of their insurance broker, if any.[13]

On October 23, 2018, also on behalf of Claimant, attorney Carl Cook emailed attorney Jonathon Katcher, counsel for the Martzes, requesting "the statement of coverage for the insurance policies on the boat [Reagan] Martz was driving and the property he was staying at that day."[14]  Mr. Katcher responded that there was no insurance for the boat, and that the property did not belong to the Martzes.[15]  The following day, Mr. Cook inquired about Reagan Martz's residence and any accompanying insurance and whether his criminal attorney was being

---

[12] Docket 25-4 at 11.

[13] Docket 25-4 at 11.

[14] Docket 25-4 at 13.

[15] Docket 25-4 at 13.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 4 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 4 of 30

paid by an insurance company.[16] Mr. Cook also asked for the identity of the vessel owner.[17] On November 8, 2018, Mr. Cook followed up on his inquiries with a letter to Mr. Katcher titled "Re: Horazdovsky vs. Martz" ("Cook Letter").[18] On November 20, 2018, Mr. Katcher responded by letter also captioned "Re: Horazdovsky vs. Martz" ("November Katcher Letter") wherein he explained that Reagan Martz did not have renters' insurance, and that there was no insurance company paying for any attorneys working on the Martzes' behalf.[19] The November Katcher Letter also identified William and Jane Martz as the owners of the Nautique at the time of the accident.[20]

On December 4, 2018, a third attorney for Claimant, Robert Stone, addressed a letter to Mr. Katcher captioned "Re: *Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce*" ("Stone Letter").[21] It stated, in part:

> I have had conversations with attorney Carl Cook regarding a boating accident that occurred on or near Flat Lake, on or about June 9, 2018. I write to seek clarification regarding a number of insurance coverage issues.
>
> It is my understanding that Reagan Martz, son of William and Jane Martz, was drinking heavily at a party sponsored by William and Jane Martz. I also understand that Reagan's grandmother, Betty Barce,

---

[16] Docket 25-4 at 16.

[17] Docket 25-4 at 19.

[18] Docket 25-4 at 22; Docket 19-1 at 1.

[19] Docket 25-4 at 24; Docket 19-2.

[20] Docket 25-4 at 24; Docket 19-2.

[21] Docket 25-4 at 26; Docket 19-3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 5 of 30

has an ownership interest in the property. It is also my understanding that Reagan was a permissive user of a boat owned by his parents.

The facts, as conveyed to me, suggest that Reagan Martz was severely intoxicated, and that as a result of such intoxication, he collided with a raft occupied by Jennifer Horazdovsky and two other female occupants. As a result of the collision, Jennifer Horazdovsky died. The other two occupants were seriously injured.

\* \* \*

I have been told that Reagan Martz fled the scene, changed from the boat to a jet ski, and continued to flee the scene until he was ultimately apprehended.

It is my understanding that Reagan Martz has been charged with manslaughter, assault, and driving under the influence.

You can appreciate our interest in investigating what potential coverages exist to pay for the damages caused. Our investigation is not complete. We are also not yet certain whether William Martz or Jane Martz bear any responsibility.

\* \* \*

I would like to avoid unnecessarily naming parties to a lawsuit.

\* \* \*

If there has been a tender of coverage to any insurance companies, please advise. I am interested in receiving a copy of any denial of coverage, acceptance of coverage, and/or any reservation of rights issued by any insurer to either Betty Barce, William or Jane Martz, or Reagan Martz, regarding this June 9, 2018 collision.[22]

On December 5, 2018, Mr. Katcher responded by letter captioned "Re:

*Horazdovsky v. Martz*" ("December Katcher Letter") stating, in part:

The alleged party in question was **not** in any manner sponsored or supported by William and/or Jane Martz.

---

[22] Docket 25-4 at 26–28; Docket 19-3 at 1–5.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 6 of 30

The cabin is **not** owned by any member of the Martz family. Our information is that the cabin is owned by the family of Darren Barce. See my October 23, 2018 email to Mr. Cook stating the same.

* * *

I have investigated and confirmed that Reagan Martz had no insurance coverage of any kind for this accident. There is no basis for William and Jane Martz having any liability for this accident. In any event, William and Jane Martz had no insurance coverage that would apply to this accident.

* * *

In light of the absence of any colorable assertion of coverage for this accident under any insurance policies that might apply to Reagan, William or Jane Martz, we have not tendered this claim to any insurance companies.[23]

According to an affidavit from Mr. Katcher submitted in support of Limitation Plaintiffs' motion, in referencing "this claim" in his December Letter, he "was not stating that the Horazdovskys had provided written notice of a claim," but "was merely stating that we had not tendered a claim for insurance coverage to any insurance company."[24] Mr. Katcher, William Martz, and Jane Martz each declare by affidavit that they did not consider any of the correspondence from Claimant's attorneys to be a written notice of a claim.[25] Mr. Katcher adds that, in fact,

---

[23] Docket 25-4 at 30–31; Docket 19-4 at 1–2 (emphasis in original).

[24] Docket 25-4 at 7–8, ¶ 11.

[25] Docket 25-2 at 3, ¶ 5 (William Martz Aff.) ("Prior to my receiving that complaint, I had never received any written notice of any claim against me or Jane Martz related to the June 9, 2018 accident involving the Nautique."); Docket 25-3 at 3, ¶ 5 (Jane Martz Aff.) ("Prior to my receiving that complaint, I had never received any written notice of any claim against me or Bill Martz related to the June 9, 2018 accident involving the Nautique."); Docket 25-4 at 4, ¶ 2 (Katcher Aff.) ("None of those pre-state court lawsuit communications ever provided written notice to me of any claim against William Martz or Jane Martz related to the accident.").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 7 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 7 of 30

sometime after the parties' correspondence, he spoke by telephone with Mr. Stone, who informed him that "it was not his practice to sue people who were not insured."[26]

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, which grants it original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."[27]

## LEGAL STANDARD

### A.    Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.[28]  When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[29]

---

[26] Docket 25-4 at 8, ¶ 12.

[27] *See also* U.S. Const. art. III, § 2, cl. 2 ("The judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction . . . .").

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[29] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (alteration in

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 8 of 30

## B.     The Limitation of Liability Act

The Limitation of Liability Act (the "Act") provides that "the liability of the owner of a vessel for any claim, debt, or liability [subject to the Act] . . . shall not exceed the value of the vessel and pending freight."[30] Claims arising from "injury by collision" are subject to limitation under the Act provided that the conduct at issue occurred "without the privity or knowledge of the owner."[31] To take advantage of these protections, the owner of a vessel must bring a civil action in a federal district court "within 6 months after a claimant gives the owner written notice of a claim."[32]

## DISCUSSION

Claimant moves for summary judgment and dismissal of the instant matter, contending that the case was not filed within six months of written notice of a claim and is thus time-barred.[33] Claimant maintains that the complaint in this action was filed nearly 19 months after the vessel owners first received written notice of a

---

original) (quoting *Anderson*, 477 U.S. at 255).

[30] 46 U.S.C. § 30505(a).

[31] 46 U.S.C. § 30505(a); *see also In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1017 (9th Cir. 2000) ("A limitation of liability action is a proceeding in admiralty for vessel owners that permits them to limit their liability (if any) to their interest in the vessel and its freight, provided that the loss was incurred without their privity or knowledge.").

[32] 46 U.S.C. § 30511(a); *see also* Fed. R. Civ. P. Supp. R. F(1) ("Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court, as provided in subdivision (9) of this rule, for limitation of liability pursuant to statute.").

[33] Docket 19 at 1.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 9 of 30

claim arising from the June 9, 2018 collision of the Nautique.[34]  According to Claimant, the owners "received written notice of a claim as early as November 8, 2018," referencing the Cook Letter and the November Katcher Letter acknowledging its receipt.[35]  Claimant adds that the vessel owners' attorney acknowledged the existence of "this claim" in the December Katcher Letter, demonstrating that the vessel owners were on notice of a claim.[36]

Limitation Plaintiffs respond that they did not receive written notice of a claim until the lawsuit was filed in Alaska Superior Court on June 4, 2020.  They acknowledge that they "received inquiries about the availability of insurance before then" but maintain that "none of these insurance-related communications asserted a demand of a right or supposed right against William or Jane Martz[,] . . . blamed [them] for any damage or loss, . . . [or] called upon [them] to pay anything due to anyone."[37]  Limitation Plaintiffs contend that these inquiries did not constitute written notice of a claim, and therefore, that the instant action was timely initiated just three weeks after the state court complaint was filed.[38]

---

[34] Docket 19 at 4–5.

[35] Docket 19 at 8 (citing Docket 19-1); Docket 19 at 8 (citing Docket 19-2).

[36] Docket 19 at 8 (quoting Docket 19-4 at 2).

[37] Docket 23 at 2.

[38] Docket 23 at 3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 10 of 30

## A. The Parties' Arguments

The parties dispute both the requirements for a written notice of claim as well as the implications of the substance of Claimant's correspondence.[39]

### i. Requirements for Written Notice

Claimant proposes a holistic, fact-intensive framework for evaluating a written notice. He contends that correspondence should "be read as a whole,"[40] and cites the District of Alaska's *Rachel K. Inc., Limitations Proceedings* for the proposition that "district courts deal with the adequacy of notice on an ad hoc basis."[41] Claimant focuses on an excerpt from a law review article cited in *Rachel K.*, which posits that "it has been said that the notice is sufficient if it provides 'all details of the situation with regard to the claim,' by which the court appears to have meant little more than the identification of the incident and the party injured and the nature of the damages.'"[42] Claimant emphasizes that the limitation of liability statute only requires written notice of a claim, and not written notice that a claim will be pursued.[43]

---

[39] The parties agree that the Ninth Circuit has not weighed in on the issue. *See* Docket 25 at 13; Docket 19 at 9 (quoting *Rachel K. Inc., Limitations Proceedings,* Case No. A95-0220-CV, 1996 WL 662495 (D. Alaska July 12, 1996)).

[40] Docket 27 at 4.

[41] Docket 19 at 9 (quoting Case No. A95-0220-CV, 1996 WL 662495 (D. Alaska July 12, 1996)).

[42] 1996 WL 662495, at *1 (D. Alaska) (quoting Graydon S. Starling, *Limitation Practice & Procedure*, 53 Tulane L. Rev. 1134, 1144 (1979)).

[43] Docket 27 at 2, 13–14.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 11 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 11 of 30

In contrast, Limitation Plaintiffs urge the Court to apply a factored test to determine whether Claimant's pre-suit correspondence constitutes written notice of a claim.[44] They contend that strict compliance with the notice requirement is important to prevent undue burdens on vessel owners who must post security, as well as to avoid needless litigation in federal courts and to prevent gamesmanship by litigants.[45] Limitation Plaintiffs highlight two existing tests that several courts have employed.[46] The first is referred to as the *Doxsee/McCarthy* test and asks whether the notice "informs the vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation."[47] The second test, referred to as the *Moreira* or *Richardson* test, asks whether the notice "(1) demand[s] a right or supposed right, (2) blame[s] the vessel owner for any damage or loss, and (3) call[s] on the vessel owner for anything due."[48] Limitation Plaintiffs urge the Court to adopt the *Moreira/Richardson* test. Relying on an

---

[44] Docket 25 at 14.

[45] Docket 25 at 23.

[46] Docket 25 at 14.

[47] *Orion Marine Constr., Inc. v. Carroll,* 918 F.3d 1323, 1330 (11th Cir. 2019) (quoting *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994)). *See also In re Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 829 (7th Cir. 1996) ("The most authoritative case states that a letter sent to a shipowner by a claimant is sufficient to trigger the six-month period if (1) it informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel (3) and is subject to limitation. *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994). As to the latter of these requirements, the written notice of claim must reveal a 'reasonable possibility' that the claim made is one subject to limitation.").

[48] *Orion,* 918 F.3d at 1330–31 (citing *Rodriguez Moreira v. Lemay*, 659 F. Supp. 89, 91 (S.D. Fla. 1987)). *See also Richardson Constr. Co.,* 850 F. Supp. 555, 557 (S.D. Tex. 1993) (citing *Moreira* factored test).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 12 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 12 of 30

Eleventh Circuit decision, they contend that the *Doxsee/McCarthy* test effectively encompasses *Moreira*—which "teaches us what signals a 'claim'"—and simply adds on a value requirement.[49] Thus, Limitation Plaintiffs contend that "to satisfy 46 U.S.C. § 30511 and Fed. R. Civ. P. Supp. F., the notice must include the *Moreira/Richardson* factors,"[50] maintaining that even those courts that adopt *Doxsee/McCarthy* still examine whether the *Moreira* test is met.[51]

In his reply, Claimant cites to several different tests. Claimant highlights the standard from the Fifth Circuit, which sets out a two part inquiry: "(1) whether the writing communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value."[52]

---

[49] Docket 25 at 16 (citing *Orion,* 918 F.3d at 1330–31).

[50] Docket 35 at 10.

[51] Docket 25 at 16–17 (citing *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d 401, 411 (E.D.N.Y. 2015) and *In re Complaint of Salty Sons Sports Fishing, Inc.*, 191 F. Supp. 2d 631, 636 (D. Md. 2002)). In *Henry Marine Serv.*, the district court applied the *Doxsee/McCarthy* test, but in concluding that the email in question "did not provide . . . sufficient written notice of . . . potential damages," also relied on *Moreira*. 136 F. Supp. 3d at 410–11. Similarly, in *Salty Sons*, the district court applied the *Moreira/Richardson* test but also considered whether there is a reasonable possibility that the claims would exceed the value of the ship, as required under *Doxsee*. 191 F. Supp. 2d. at 636. Thus, both courts seemingly adopted elements from both tests.

[52] Docket 27 at 3 (quoting *In re CDM Resource Mgmt., LLC*, Case No. 15-112, 2015 WL 6473155, at *6 (E.D. La. 2015) (quoting *Complaint of RLB Contracting, Inc. v. Butler*, 773 F.3d 596, 602–03 (5th Cir. 2014) (emphasis in original)). Limitation Plaintiffs seek to distinguish *CDM*, noting that the letter at issue there contained, among other things, a request for personnel files, medical records, photos, statements by the parties, and other documentation, which the court had likened to discovery, rather than simply making insurance inquiries. Docket 35 at 11–13.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 13 of 30

### ii.  Content of the correspondence

Claimant contends that the written correspondence between the parties in 2018 "clearly identif[ies] the details of the situation with regard to the claim" by describing the vessel collision.[53]  He adds that the Stone Letter was captioned to reflect the parties dispute as "Re: *Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce*,"[54] and that courts have credited such styling as providing notice of a potential lawsuit.[55]  Claimant contends that the detailed letter, along with the caption and Mr. Katcher's subsequent reference to "this claim," provide "conclusive evidence of Limitation Plaintiffs having sufficient notice of the reasonable probability of a possible action" against them.[56]

Limitation Plaintiffs respond that Claimant's correspondence does not satisfy the *Moreira/Richardson* test as it is devoid of "any demand of right, any

---

[53] Docket 19 at 9. Claimant adds that Limitation Plaintiffs were on notice of the possibility of a claim as soon as the accident happened, since boat owners are strictly vicariously liable for the negligence of a permissive user of the boat under Alaska law.  Docket 27 at 5 (citing Alaska Statute 05.25.040).  However, the federal limitations statute requires written notice of a claim, and therefore Limitation Plaintiffs' knowledge of vicarious liability separate and apart from any written notice is not dispositive.

[54] Docket 27 at 7.

[55] Docket 27 at 6 (citing *In re Complaint of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 541 (D.N.J. 1997)).  In *Beesley's*, the district court dismissed a petition for limitation of liability as time-barred after evaluating the "whole tenor" of the correspondence between the parties.  *Id.* at 541.  Among other things, it credited that the letters indicated the claimant was injured on the owner's jet-skis, provided a theory of liability (negligence), urged the owner to inform his insurance carrier, made reference to claims, and itemized medical expenses.  *Id.* at 542–544.  The court also gave weight to the fact that a letter was captioned in the manner of a lawsuit: "Re: Gillespie vs. Beesley's Point Sea Doo, Inc. t/a Sea Isle Sea Doo, et al." along with the date of the incident.  *Id.* at 542.

[56] Docket 27 at 7.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 14 of 30

blaming of William or Jane Martz for damage or loss, any call for something due . . . or any accusations of negligence or any demands for payment."[57]  They maintain it lacks an adversarial tone and is tentative about legal action,[58] and that the caption of *Horazdovsky vs. Martz* only indicates a "present controversy" and not a claim.[59]  Limitation Plaintiffs contend that the written notice must do more than recite facts creating the potential for a claim.[60]  They maintain that Mr. Katcher's reference to "this claim" in his December Letter was a reference to a claim for insurance coverage information made in response to Mr. Stone's questions.[61]  Limitation Plaintiffs contend that it is "entirely possible to inquire about insurance without making a claim," reasoning that the attorneys did so to determine whether it was worth making a claim.[62]  They contend that, regardless, the issue is not

---

[57] Docket 25 at 25.

[58] Docket 25 at 25.

[59] Docket 25 at 21–22 (quoting *Doxsee*, 13 F.3d at 554).

[60] Docket 25 at 18–19 (citing *Rachel K*, *Petition of J.E. Brenneman Co.*, 157 F. Supp. 295, 297 (E.D. Pa. 1957); *The Belleville*, 35 F. Supp. 934 (E.D.N.Y. 1940); *Petition of Anthony O'Boyle, Inc.*, 51 F. Supp. 430, 431 (S.D.N.Y. 1943); and *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d at 411)). Limitation Plaintiffs acknowledge that the *Doxsee* test refers to a "potential claim," but contend that it is best understood as referencing a potential lawsuit, and not merely the potential existence of a claim. Docket 25 at 19–20 (citing *In re the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 604 (5th Cir. 2014)).

[61] Docket 25 at 26. In his affidavit, Mr. Katcher states that his use of the term "this claim" was in reference to the fact that they "had not tendered a claim for insurance coverage." Docket 25-4 at 7, ¶ 11.

[62] Docket 35 at 7. Limitation Plaintiffs also contend that courts have held that "insurance inquiries do not constitute written notice of a claim." Docket 25 at 21. In support of this statement, they cite three cases: *In re Hollis B. Corp.*, Case No. 2016-14, 2016 WL 8732310, at *3 (D.V.I. Sept. 30, 2016); *In re Cameron*, Case No. 3:17-cv-1460-J-20JRK, 2018 WL 2688758, at *2 (M.D. Fla. April 18, 2018); and *Int'l Ship Repair & Marine Servs., Inc. v. Estate*

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 15 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 15 of 30

whether Mr. Katcher referenced a claim, but rather, whether Claimant sufficiently

put them on notice of a claim.[63]  Limitation Plaintiffs emphasize that, in light of Mr.

Stone's verbal representation that he does not sue individuals without insurance,

they had no reason to bring a limitation action,[64]  and they note that Claimant never

responded to Mr. Katcher's statement that he saw no basis for liability as to

---

*of Morales-Montalvo*, Case No. 8:08-cv-1617-T-23AEP, 2010 WL 181575, at *4 (M.D. Fla. Jan. 12, 2010).  Upon review, the Court finds that none of these cases holds that insurance inquiries cannot satisfy a written notice of claim; rather, in each opinion, the district court carefully considered the relevant correspondence and found it wanting in some respect.  The cases are factually distinct from the one at bar.  For instance, the notice in *Hollis* did not specify the details of the accident or the injuries suffered.  2016 WL 8732310, at *3.  In *Cameron*, the correspondence was entirely by text message and lacked any Docket 25 at 18–19 (citing *Rachel K*, *Petition of J.E. Brenneman Co.*, 157 F. Supp. 295, 297 (E.D. Pa. 1957); *The Belleville*, 35 F. Supp. 934 (E.D.N.Y. 1940); *Petition of Anthony O'Boyle, Inc.*, 51 F. Supp. 430, 431 (S.D.N.Y. 1943); and *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d at 411)).  Limitation Plaintiffs acknowledge that the *Doxsee* test refers to a "potential claim," but contend that it is best understood as referencing a potential lawsuit, and not merely the potential existence of a claim.  Docket 25 at 19–20 (citing *In re the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 604 (5th Cir. 2014)).

[62] Docket 25 at 26.  In his affidavit, Mr. Katcher states that his use of the term "this claim" was in reference to the fact that they "had not tendered a claim for insurance coverage."  Docket 25-4 at 7, ¶ 11.

[62] Docket 35 at 7. Limitation Plaintiffs also contend that courts have held that "insurance inquiries do not constitute written notice of a claim."  Docket 25 at 21.  In support of this statement, they cite three cases:  *In re Hollis B. Corp.*, Case No. 2016-14, 2016 WL 8732310, at *3 (D.V.I. Sept. 30, 2016); *In re Cameron*, Case No. 3:17-cv-1460-J-20JRK, 2018 WL 2688758, at *2 (M.D. Fla. April 18, 2018); and *Int'l Ship Repair & Marine Servs., Inc. v. Estate of Morales-Montalvo*, Case of the formality of the letters here.  2018 WL 2688758, at *2.  And in *International Ship Repair,* the letters only requested statutorily mandated disclosure of insurance information.  2010 WL 181575, at *4.

[63] Docket 35 at 8.

[64] Docket 25 at 24.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 16 of 30

Limitation Plaintiffs.[65]  Limitation Plaintiffs conclude that, all in all, "these letters hardly paint a picture of a lawsuit in the offing."[66]

In his reply, Claimant disputes Limitation Plaintiffs' contention that the correspondence does not satisfy the *Moreira* factors; he contends that the correspondence "paint[s] a vivid picture of the incident"[67] and clearly indicates the basis of his claim by stating that Reagan Martz was a permissive user of the Nautique when he collided with the raft carrying Jennifer Horazdovsky, causing her death.[68]  Claimant adds that the Stone Letter specifically mentions the damages resulting from the incident involving Limitation Plaintiffs' vessel,[69] and emphasizes that the vessel owners conceded that the value element of the *Doxsee/McCarthy* test is met.[70]  Lastly, Claimant disputes that the vessel owners could have interpreted the letters as relating exclusively to insurance inquiries,

---

[65] Docket 25 at 22 (citing *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d at 410).

[66] Docket 25 at 25.

[67] Docket 27 at 9.  Claimant relies on the analysis in *Okeanos Ocean Research Found., Inc. v. M/V Finback*, 704 F. Supp. 412, 414 (S.D.N.Y. 1989).  There, the District Court for the Southern District of New York distinguished the letter at issue, which it found did not constitute notice, from letters found sufficient by other courts, including the Second Circuit, on the basis that it was "void of *any* details of the incident in question . . . [and] does not mention the cause of the injuries, the type of the injuries sustained or [their] severity . . . ."  *Id.* at 416.

[68] Docket 27 at 10.

[69] Docket 27 at 11.

[70] Docket 27 at 3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 17 of 30

reasoning that "[i]t is axiomatic that for there to [be] an investigation of insurance coverage, there must be a claim."[71]

## B. Analysis

The parties do not dispute any material facts; their dispute is limited to whether Claimant's pre-suit written correspondence provides notice of a claim as required by 46 U.S.C. § 30511. If it does, then Limitation Plaintiffs' June 25, 2020 petition is untimely and dismissal of the limitation proceeding is warranted. If it does not, then this action may proceed.[72]

The Limitation of Liability Act of 1851 adopted a rule limiting a shipowner's liability to the value of their vessel and cargo in an effort to encourage shipbuilding and investment.[73] As it exists today, the central provision of the Act allows the owner of a vessel to limit their liability to no more than "the value of the vessel and pending freight" for any claim subject to limitation.[74] This provision covers claims for "injury by collision," including death.[75] In its original form, the Act did not provide

---

[71] Docket 27 at 12. In their reply to the cross-motion, Limitation Plaintiffs maintain that "[t]here is no such axiom," as it is "entirely possible to inquire about insurance without making a claim." Docket 35 at 7.

[72] *But see Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448–51, 454 (2001) (recognizing conflict between saving to suitors clause and the Limitation Act, and holding that district court may dissolve injunction, stay limitation proceedings, and allow claimant to proceed in state court, if vessel owner's right to seek limitation can be adequately protected).

[73] *Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 235 (9th Cir. 1989); *In re Complaint of McCarthy Bros. Co.*, 83 F.3d 821, 826 (7th Cir. 1996).

[74] 46 U.S.C. § 30505(a).

[75] 46 U.S.C. § 30505(b); *see also Matter of City of Huntington Beach*, Case No. SACV 10-641-

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 18 of 30

a time limit for vessel owners to petition for limitation of liability, and courts would allow petitions even after entry of judgment.[76]  However, the Act was amended to include a six-month time limit for filing a petition: "[t]he action must be brought within 6 months after a claimant gives the owner written notice of a claim."[77]

The Act does not specify the requirements for the written notice of a claim and while many district courts and some circuit courts have addressed the issue, the Ninth Circuit has not.  Courts have adopted a variety of approaches to evaluate a written notice of a claim; however, there exist some well-established principles. For one, it is widely accepted that a formal complaint is not necessary to satisfy the requirement and that letters by claimants to vessel owners may constitute notice.[78]  Moreover, the notice need not exist in a singular letter and can be issued through a body of correspondence.[79]  It is also the case that courts evaluating

---

JST (RNBx), 2011 WL 13225113, at *4–5 (C.D. Cal. Apr. 4, 2011) ("Finally, a claim for wrongful death resulting from a collision with a vessel in navigable waters is a claim subject to the limitation.").

[76] *Esta Later Charters,* 875 F.2d at 236.

[77] *Id*. (citing Act of June 5, 1936, Pub. L. No. 662, 49 Stat. 1479 (revising R.S. § 4283 *et seq*. as amended)).

[78] *Doxsee Sea Clam Co. v. Brown*., 13 F.3d 550, 554 (2d Cir. 1994); *In the Matter of the Complaint of Vulcan Constr. Materials, LLC*, 427 F. Supp. 3d 694, 696–97 (E.D. Va. 2019) ("The statute does not elaborate on what constitutes appropriate notice, although '[i]t is well-settled that a letter sent by a claimant (or claimant's attorney) to a vessel owner may constitute notice of a claim . . . .") (quoting *Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944, 947–49 (E.D. Va. 2005)).

[79] *See In re the Matter of the Complaint of RLB Contracting Inc.*, 773 F.3d 596, 603 (5th Cir. 2014) (collecting cases where courts have considered "a body of correspondence rather than each of its individual constituent parts").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 19 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 19 of 30

notices apply "a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'" as they engage in a fact-intensive inquiry,[80] even when applying a factored test.[81]

Several such tests have emerged as courts grapple with determining what constitutes a notice of a claim. These include those identified by Limitation Plaintiffs—the *Doxsee/McCarthy* test and the *Moreira/Richardson* test—as well as the Fifth Circuit's two-part "reasonable possibility" test identified by Claimant. The elements of each of these tests is set out *supra*.[82] This is by no means a comprehensive list, but illustrates some of the variety—and some of the similarities—among the existing tests, none of which is binding on this Court.[83]

---

[80] *Doxsee Sea Clam Co. v. Brown.*, 13 F.3d 550, 554 (2d Cir. 1994) (quoting *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir. 1958)); *see also Rodriguez Moreira v. Lemay*, 659 F. Supp. 89, 90–91 (S.D. Fla. 1987) ("Although the notice of claim need not be presented in a particular form, it must inform the owner of the claimant's intention to seek damages from the owner.").

[81] *Vulcan*, 427 F. Supp. 3d at 697 ("Most courts have utilized a variation of the above tests in conducting a holistic, fact-intensive approach to determining whether a letter is sufficient."); *RLB Contracting Inc.*, 773 F.3d at 605 (concluding that "mandating that written notice contain 'magic words' or specific elements might well impose a requirement not found in the statutory text"); *Int'l Ship Repair & Marine Services, Inc. v. Estate of Wilfredo Morales-Montalvo*, Case No. 808-cv-1617-T-23AEP, 2010 WL 181575, at *3 (M.D. Fla. Jan. 12, 2010) (summarizing available tests but adding that the notice of claim "need not be presented in a particular form").

[82] *See* supra at 12–13.

[83] For example, Claimant highlighted other tests. Docket 27 at 3, 12. *See also In re Oceanic Fleet, Inc.*, 807 F. Supp. 1261, 1262 (E.D. La. 1992) ("Courts have concluded that written notice must inform the owner both of 'details of the incident' and 'that the owner appeared to be responsible for the damage in question.'") (quoting *In re Complaint of Okeanos Ocean Research Found., Inc.*, 704 F. Supp. 412, 415 (S.D.N.Y. 1989)); *Coastal Excursions, Inc. v. Khoury*, Case No. 3:07 CV 2782, 2007 WL 4553961 (N.D. Ohio Dec. 19, 2007) ("Courts have also determined that the written notice must inform the vessel owner of (1) the details of the occurrence, (2) the claimant's assertion that the owner was to blame for the injury, and (3) his intention to seek damages from the vessel owner") (quoting *In re Wepfer Marine*, 344 F. Supp.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 20 of 30

Limitation Plaintiffs urge the Court to apply the *Moreira/Richardson* factors—either on their own or as a subset of the *Doxsee/McCarthy* test. However, at least one circuit court has found that the *Doxsee/McCarthy* test is "the most widely-accepted" and most authoritative, whereas the *Moreira* test has "fallen into desuetude."[84] The Eleventh Circuit concluded that the *Doxsee/McCarthy* test was superior because the value requirement "serves the six-month limitation period's purpose by encouraging shipowners to act promptly while at the same time eliminating consideration of small-value cases unlikely to benefit from the Act's protection."[85] The Court is persuaded that a value requirement aligns with the purposes of the Act and moreover, finds that hueing too strictly to enumerated factors, like those in the *Moreira/Richardson* test, is counterproductive to what is an inherently fact-specific inquiry.[86]

The Court also finds that the notice need not make an unequivocal demand to the vessel owner for compensation for a loss; it is enough if the notice presents a reasonable possibility of a claim subject to limitation. The Fifth Circuit, in

---

2d 1120, 1128 (W.D. Tenn. 2004)).

[84] *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1331 (11th Cir. 2019).

[85] *Id.*

[86] *See, e.g., RLB Contracting, Inc.*, 773 F.3d at 605 ("mandating that written notice contain 'magic words' or specific elements might well impose a requirement not found in the statutory text"); *In re Complaint of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 541 (D.N.J. 1997) (reasoning that the court must consider the "whole tenor" of the letter and not apply *Richardson* factors too narrowly and concluding that the letter constituted written notice of a claim "although the letter does not include an express 'demand of a right or supposed right'").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 21 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 21 of 30

adopting this approach, explained that "[t]he purpose of the 'reasonable possibility' standard [as to the amount of the loss] is to place the burden of investigating claims on the vessel owner," as it is the vessel owner that has much to gain from the statutory right to limit liability.[87]  The Circuit Court then concluded that this same standard should apply to the first prong as well—the reasonable possibility of a claim—by reasoning that "it would be inconsistent to reverse that risk when it comes to notice of a potential claim,." The Fifth Circuit also reasoned that imposing a clear demand requirement instead of a reasonability possibility of such a demand being made "might well impose a requirement not found in the statutory text."[88] Rather, the Fifth Circuit adopted "a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'—when determining if sufficient notice was given."[89]

Notably, the *Doxsee/McCarthy* test parallels the Fifth Circuit's "reasonable possibility" test.  Both tests consider whether the written notice informed the vessel owner of a claim—the former asking if the written notice informs the owner of "an actual or potential claim" and the latter whether it communicates the "reasonable possibility" of a claim—and both inquire whether the notice discloses that the

---

[87] *RLB Contracting, Inc.*, 773 F.3d at 602.  *See also In re Eckstein Marine Serv.*, 672 F.3d 310 (5th Cir. 2012).

[88] *RLB Contracting, Inc.*, 773 F.3d at 605.

[89] *Id.* (citing *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994)).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 22 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 22 of 30

damages may exceed the vessel's value. The Court agrees with this approach and considers whether Claimant's correspondence communicates to Limitation Plaintiffs the reasonable possibility of a claim and the reasonable possibility that the claim may exceed the value of the Nautique.

The value requirement is readily determined; the parties agree that the damages arising from the June 9, 2018 accident at Flat Lake would exceed the value of the Nautique and satisfy the value requirement of either the *Doxsee/McCarthy* or the "reasonable possibility" test.[90] In the Court's view, Limitation Plaintiffs' knowledge that the potential damages from the fatal accident involving their vessel far exceeded the value of that vessel diminishes the likelihood that they could reasonably interpret Claimant's communications as mere inquiries about insurance.[91]

The key inquiry, however, is whether Claimant's correspondence sufficiently communicated to the vessel owners the reasonable possibility of a claim. Turning to the correspondence, the Court considers first its style and appearance, as these

---

[90] *See* Docket 25 at 17 ("Limitation Plaintiffs in this case do not contest that, if there had been a written notice of a claim against them for the fatal accident that occurred here, and if that writing had satisfied the basic requirements for it to be considered a <u>claim</u> . . . then on these facts it would certainly have also satisfied the additional value/amount requirement that *Doxsee/McCarthy* imposed."); *see* Docket 27 at 3. Claimant's correspondence clearly states that Jennifer Horazdovsky lost her life in the collision and that others were injured as well. *See* Docket 25-4 at 11, 26, 27; Docket 19-3 at 3.

[91] *In re Ufo Chuting of Hawaii*, 233 F. Supp. 2d. 1254, 1259 (D. Haw. 2001) (distinguishing case where injured party had "clearly suffered significant injuries known to the owner," noting that "even before the notice was sent, the boat owner knew that damages could exceed the value of the speedboat and its then pending freight").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 23 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 23 of 30

are "necessary components to analyzing the note in its entirety and determining the tenor of the note as a whole."[92]  All of the correspondence from Claimant to vessel owners came by way of his attorneys, immediately lending it some formality and import.  Alongside an e-mail exchange, Claimant sent three letters: the Lamb Letter,[93] the Cook Letter, and the Stone Letter.[94]  Each appears on law firm letterhead, and the Cook and Stone Letters are captioned with reference to the adversarial posture of the parties.[95]  In *Beesley's*, the District Court for the District of New Jersey found a similarly styled caption to satisfy the notice requirement holding that "[a]lthough the letter does not include an express 'demand of a right or supposed right,' the caption at the top provides sufficient notice of potential lawsuit."[96]  The Court finds that the professional style of Claimant's letters and the

---

[92] *Vulcan*, 427 F. Supp. 3d at 698 ("As would any recipient, the Court begins by analyzing the style and appearance of the note.").

[93] The Lamb Letter was addressed to Reagan Martz, and not Limitation Plaintiffs, but was provided to the Martzes' attorney, who treats it as part of the body of correspondence.  *See* Docket 25-4 at 4, ¶¶ 3–4; Docket 25-4 at 11.

[94] *See* Docket 25-4 at 11; Docket 25-4 at 22; Docket 19-1 at 1; Docket 25-4 at 26; Docket 19-3 at 1.

[95] See Docket 25-4 at 26 and Docket 19-3 at 1 (captioned Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce); Docket 25-4 at 22 and Docket 19-1 at 1 (captioned Horazdovsky vs. Martz).

[96] 956 F. Supp. at 542 (letter was captioned "Gillespie vs. Beesley's Point Sea Doo, Inc. t/a Sea Isle Sea Doo, et al" with the date of the accident); *see also Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994) (crediting that "the 'Re:' line of the letter was styled in the manner of an actual, present controversy: 'Christian Brown v. Doxsee Sea Clam Company,'" in concluding that letter provided written notice of a claim).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 24 of 30

captions of the Cook and Stone Letters contribute to the serious tenor of the communications.

The Court turns next to the substance of the correspondence. The first few missives from Claimant are fairly limited in scope. The Lamb Letter provides that Claimant is "searching for any potential insurance coverage that might be available to compensate the Estate of" Jennifer Horazdovsky and asks for the name and contact information of the vessel owner, as well as any insurance information.[97] Similarly, Mr. Cook, in his email exchange with Mr. Katcher and in his letter following up on that exchange, requests information about any insurance coverage for the vessel, or for Reagan Martz separate and apart from his parents, as well as for information about vessel ownership and about funding for Reagan Martz's attorneys' fees.[98] The Court concludes that, on their own, these written communications are insufficient to put the vessel owners on notice of a claim. Although they mention that Claimant is seeking compensation for his wife's estate and for his young child, they are otherwise focused on gathering information from the Martzes.

However, the Stone Letter is far more substantive. It provides significant details about the June 9, 2018 collision and outlines a theory of liability that

---

[97] Docket 25-4 at 11.

[98] Docket 25-4 at 13, 16, 19, 22.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 25 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 25 of 30

implicates the vessel owners.[99]  Specifically, Mr. Stone blames Reagan Martz for the collision that resulted in Jennifer Horazdovsky's death and adds that "Reagan was a permissive user of a boat" owned by Limitation Plaintiffs.[100]  Moreover, Mr. Stone expressly mentions a lawsuit, and, by stating that he "would like to avoid unnecessarily naming parties to a lawsuit," communicates that Claimant intends to bring one.[101]  Mr. Stone adds that "[o]ur investigation is not complete . . . [w]e are . . not yet certain whether William Martz or Jane Martz bear any responsibility," indicating that they are among those who could be named in the lawsuit.[102]

The Stone Letter is undoubtedly tentative; however, "a writing may constitute sufficient notice of claim even if it is couched in tentative terms, referring only to the 'possibility' of legal action."[103]  The Court must look at the letter "in its entirety

---

[99] *See Beesley's*, 956 F. Supp. at 544 (holding that a letter conferred notice where it provided an opinion about what caused claimant's injuries, offered a theory of liability, and listed the medical expenses).

[100] Docket 25-4 at 26; Docket 19-3 at 1 ("Reagan Martz was severely intoxicated, and . . . as a result of such intoxication, he collided with a raft. . . [a]s a result of the collision, Jennifer Horazdovsky died.").

[101] Docket 25-4 at 27; Docket 19-3 at 3.

[102] Docket 25-4 at 27; Docket 19-3 at 3.

[103] *In re Complaint of Bayview Charter Boats, Inc.*, 692 F. Supp. 1480, 1485 (E.D.N.Y. 1988). To the extent it is disputed, the Court finds that notice of a potential claim, as opposed to notice of an actual claim, satisfies the statutory requirements.  Limitation Plaintiffs do not point to any authority that expressly supports their contention that a potential claim refers only to a potential lawsuit.  Docket 25 at 20.  The Act requires notice of a claim—not notice of a lawsuit; accordingly, the Court is not persuaded that the reference to a "potential claim" in *Doxsee* should be interpreted strictly as reference to a potential lawsuit and not to a potential claim more broadly.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 26 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 26 of 30

to determine whether it is too ambiguous or non-adversarial to constitute notice."[104] In addition to its formal style and adversarial caption, the Stone Letter (1) details the accident and resulting damages, (2) provides a theory by which Limitation Plaintiffs are liable, (3) refers to a lawsuit, and (4) informs the Martzes that their responsibility is under investigation. The Court does not find the letter to be so ambiguous or non-adversarial so as to fail to constitute notice of a claim. The "tentative" language in the Stone Letter is quite similar to the language held to be adequate in *Spooner*, where the claimant's letter stated that "the Port Authority is presently determining the extent of the claim which it may have against you . . . ."[105] After considering the entirety of the letter, the Second Circuit concluded that "[t]o adopt the view that the notice would be effective if the word 'shall' had been substituted for 'may,' but not otherwise, would indeed exalt hair-splitting over substance. Read in its entirety the letter is a notice of claim . . . ."[106] Similarly, the Court finds that the Stone Letter, read in its entirety, constitutes a notice of claim; the disclosures by Claimant are sufficient to put the vessel owners on notice of the reasonable possibility of a claim against them.

Moreover, considering the broader context of Claimant's correspondence further supports the Court's conclusion. "A letter from an attorney that informs a

---

[104] *Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944, 948 (E.D. Va. 2005).

[105] *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir. 1958).

[106] *Id.* at 586.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 27 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 27 of 30

vessel owner of the attorney's representation of a person who was injured while operating that owner's vessel and advises the owner to contact its insurance company is sufficient to put the owner on notice of a potential claim."[107]  In the Court's view, Claimant's repeated inquiries by e-mail and otherwise into the vessel owners' insurance coverage is equivalent to telling the owners to contact their insurance company.  When combined with the Stone Letter's recitation of the details of the collision and its proposed theory of liability, the e-mails and letters from Mr. Cook and Mr. Lamb contributed to putting the vessel owners on notice of a claim.  Read as a whole, Claimant's correspondence was clearly sent in anticipation of litigation.

Claimant makes much of the fact that Mr. Katcher refers to "this claim" in his December Letter.  Having already determined that the Stone Letter, alone or in combination with the remaining body of Claimant's correspondence, provides written notice of a claim, the Court does not reach the implications of Mr. Katcher's statement.  The Court agrees with Limitation Plaintiffs that it is Claimant's correspondence that must be examined for written notice of a claim and not the vessel owners' responses.  In the same vein, Mr. Stone's verbal reassurance to Mr. Katcher that he does not typically sue individuals without insurance is peripheral to the Court's analysis and of limited significance.  While Limitation

---

[107] *Beesley's*, 956 F. Supp. at 541 (citing *Complaint of Bayview Charter Boats, Inc.*, 692 F. Supp. 1480, 1485–86 (E.D.N.Y. 1988)).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 28 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 28 of 30

Plaintiffs contend that Mr. Stone's statement lulled them into a sense of false security, in doing so, they betray some understanding that Claimant's written communications signaled to them that he had at least a potential claim and was considering whether it was worth pursuing.[108]   Moreover, Mr. Stone's preferred litigation tactics do not bear on whether Claimant had the reasonable possibility of a claim, or whether Limitation Plaintiffs received written notice of that fact.

Lastly, although Limitation Plaintiffs stress the burden on vessel owners who must front equity and spend resources to file suit in federal court, those burdens are slight in comparison to the benefits they stand to reap from the protections of the Act.[109]   This is particularly true here where Limitation Plaintiffs' approximate their interest in the Nautique as $15,000 but where the underlying claim is for wrongful death.[110]   Thus, while it is important that a written notice be clear, vessel owners cannot ignore what is commonsensically a written notice of a claim in the

---

[108] The Court agrees with Claimant that it is reasonable to assume on some level that a party repeatedly asking about insurance coverage for damages from a collision has an actual or potential claim.  At oral argument, counsel for Limitation Plaintiffs posited that "those insurance inquiries [were] made, because, as I said before, plaintiff's counsel were trying to find out if it was worth making a claim."  Docket 38 at 2:10–13.  Implicit in this statement is an understanding that Claimant had an actual or potential claim.

[109] *See Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 239 (9th Cir. 1989) ("'[S]hipowners are in a poor position to rely on equitable principles . . . [t]he Liability Act provides shipowners a generous measure of protection not available to any other enterprise in our society."); *see also In re the Matter of the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 602 (5th Cir. 2014) ("Assigning the risk of uncertainty to the vessel owner fits the purpose of the six-month limitation, which is 'to require the shipowner to act promptly to gain the benefit of the statutory right to limit liability.'").

[110] Docket 1 at 4, ¶ 13; Docket 1-1 at 3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 29 of 30

hope that a claimant will decide not to pursue the claim because of the unavailability of insurance coverage or for any other reason.

Because Limitation Plaintiffs failed to file for limitation of liability in a timely fashion, they cannot pursue this limitations action under 46 U.S.C. § 30511. Claimant is entitled to summary judgment and dismissal of the instant complaint.

## CONCLUSION

In light of the foregoing, Limitation Plaintiffs William Martz and Jane Martz's Motion for Summary Judgment at Docket 24 is DENIED. Claimant Andrew Horazdovsky's Motion for Summary Judgment at Docket 19 is GRANTED and the complaint is dismissed. The Court's June 30, 2020 injunction at Docket 17 is VACATED. The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 3rd day of November, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 30 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 30 of 30